We'll hear our next case, United States v. Battle, No. 20-1042, and Mr. Corbanics, we'll hear from you first. Good morning. Michael Corbanics, I represent Jamal Battle, also present is Joel Silberman, who is pursuant to CJA, working with me on this case. Great. Let me mention at the outset, I'm the one who asked for argument in this case. I'm not interested in the rehafe issue. I'm interested in the prosecutorial misconduct issue. As well as I am. I will be very brief unless the court asks further questions. I hope in my submission I laid out my reasoning and my feeling for the cumulative effect of all this. So rather than go over that again ad nauseam, I'm prepared to address the court with any questions if they have any. I found your discussion very thorough, and my questions are more for your opponent rather than for you. And I should have saved more rebuttal time. I mean, I suppose an issue here is how did the government violate district court's order when it actually didn't mention the age of L.W.? The word was reference in the order. No, no, I mean, actually during the trial, it was more of child or holding the hand of her dad. Exactly. But I mean, I guess you can argue that it was the spirit of the order that was violated, not necessarily the terms. No, it was the terms. The second part of the terms said, I will not allow you, you're not allowed to make reference to the victim or the victim's age. Reference, child, holding hands, all those things which I listed ad nauseam may not seem like a big deal singularly, but things as they get support and repeated gain less resistance, have more prejudicial value. And I think that as it progressed is how the violation deprived my client a right of a fair trial. And there were objections to the use of that language, right? There were objections to the use of that language. There are objections used. I'd like to think. But then again, I'm arguing my own case were reasonable because as a trial attorney, you have to make decisions. They said it in opening. Do I really want to highlight that now? What I'm saying is prejudicial. I'm going to jump up in front of a jury and tell them that I object. So maybe you hope it slides. Then the testimony comes. And one of my objections, when I finally did go to sidebar, said, and I stated and I believe preserved all those objections when I said I have let this go. And now I am saying that it's time the court step in and the court did. And then the court had to keep pulling them back. So I will, if there's any other questions, anything more. All right. Thank you, counsel. May it please the court, Stephen G. Sanders on behalf of the United States, the appellee in this matter. Let me go right to the issue that you're interested in and that and I'll take it in two stages. The first is, did we violate the in limine ruling? And the answer to that is no. The in limine ruling did not forbid either party from mentioning the age of the victim. And let me just explain and emphasize. Before the first juror was sworn, and this is in Mr. Kormanek's brief, right, a statement was read to the jury, the prospective jury pool, what this case is about. And he quotes it in full. That's his statement of facts for his his brief. On page five of the defense brief, block quote, the first full paragraph. This is what the prospective jurors heard. It is further alleged that one of the bullets inadvertently struck a girl who was walking with her father. She sustained a bullet wound to the leg and was subsequently treated for her injuries. Now, every prospective juror heard that on the record at the pretrial conference the day before jury selection. Judge Martini said, I understand the parties haven't agreed upon statement. Right, Mr. Kormanek's. Yes, we've agreed on it. No problem with it being read to the jury. So even before the first juror is sworn, the jury already knows that a young girl because it's referring to a girl, a girl, no young girl, no girl holding the hand. Well, I don't think there's an issue with the with the girl holding the hand. Right. Well, I mean. When you think of a child walking along with a father, when you say holding the father's hand. Frankly, I think of a little girl because big girls don't want to hold hands, they want to skip along ahead. OK, well, even if that's so, Your Honor, let me let me point to a second fact that that makes this a little revisionist history by by the defense. Mr. Kormanek, at the time that the that the primary witness, Mr. Molina, testified to what he saw. Right. He also testified that he called 9-1-1 and he asked and said why he called 9-1-1. The prosecutor then plays the 9-1-1 tape for the jury. Right. And Mr. Kormanek was asked before the 9-1-1 tape was played, said, and does it, you know, unless there's any issues, he says, no objection, judge. I've heard the tape. That's it. Appendix page 142. On that tape, Mr. Molina is heard saying, the reason I ran back to my apartment and called 9-1-1 is because I didn't think it was right that a little girl got shot, that a little girl got hurt. So that came in without objection and not not only not without without objection, but strategically, because Mr. Kormanek wanted to use to his advantage the fact that Mr. Molina on that call said he didn't know who the shooter was. Right. Well, what about the stipulation that the age of the girl would not be mentioned? I mean, is that nothing then? Is that is that. Does it have no effect? I'm not saying it has no effect. I'm saying if Mr. Kormanek thought that the that the use of the word child or his derivatives, derivatives, children was barred by that order, it was it was up to him to object or to seek clarification of it. There were numerous. And so then if he didn't object, then the stipulation was no longer valid at all. It's it's not a situation. I think then there's a disagreement between the government and the defense over what the terms of that order meant. But there was, as I cited in my brief, there were numerous times where where the parties were asked about and it was very difficult for Mr. Moore, the father of him, to discuss what he was doing that day, walking through that scene with about five kids. Right. And he even said, I was going back to my place to get my older one and my younger one. So he had kids that were older and younger than than the shooting victim here. There was no effort by by the defense to say that should be sanitized, that we should only talk about persons. And in fact, what he's done on appeal is to try to rewrite the scope of the order and to make it look as if all these objections were preserved when he when he got up once. And even the objection, what about all the objections? His objection one time was to the mention of the use of the word stroller. And Judge Martini said, no, that's not the victim. That's OK. But then he said to the prosecutor, you don't need to go further. Move on. And there were no other objections. His only other objection was to the fact that an ambulance was called. So we're reviewing for plain error. Yes, you are. And in fact, the cumulative error claim was not even raised in the in the motion. So this is a plain error case. There were only two objections to the use of the word child. There were no objections to the use of the word child. There was an objection, from my recollection of the record, to the fact that that the victim's father mentioned that he was walking and pushing a stroller. And at that point, Mr. Corbett went to sidebar and said and objected, and Judge Martini said, no, the stroller is not the victim. That's OK. But but, you know, he warned the prosecutors at that point to stay away from that. What he did object to, like I said, was to the ambulance become and Judge Martini said, you don't need to go there because then you're implying it's a serious shooting. And that's what was, according to Judge Martini's own words, the focus of his order. But since we're in plain error land and if you're going to if we're going to analyze this, let's look at the strength of the evidence versus what would have happened in a trial. Had if we want to grant Mr. Corbett that there should have been no mention of the word child, right? At least the fact that someone was shot with that firearm, which was never recovered. It's directly probative of the essential element of the offense, that there was a firearm as defined by federal law, capable of producing a projectile. And when you don't have the firearm, the best evidence of that other than an eyewitness and the video only shows a muzzle flash. You can't tell that that person's holding a firearm in the video. So the fact that a shot was fired, people heard shots and that someone was wounded by a projectile is essential to the government's case. So let's imagine we have put on a case where the only reference was to someone getting hurt. Right. That is still enormously prejudicial. And in a sense, it hurts the defendant's case. Right. But it's but that's what it's meant to. But a little girl hurts it even more. But the increment. Quote, a little girl or a quote, a little girl holding her father's hand. Well, the what the incremental value of that prejudice, I submit, is is minimal. And let me again discuss the strength of the evidence here. Right. We had the text messages between Mr. Battle and Miss Todd. Way right where we know they're quarreling. Then she gets out of the car and goes to the apartment, she hears gunshots, she doesn't see who fired them, but she opines without objection that she thinks Mr. Battle fired him based on his earlier threats. Then afterwards, she texts him and said, you really scared me back there. And what does he do? He doesn't say, I don't know what you're talking about. He says, you tried to play me with your friend. So that's what it is. Some in substance, that's that that was his response. So that's an admission. And then we have him talking to Mr. Vaughters later. And that's can't be a coincidence. The car he jumped into, Mr. Molina identified as a car he had worked on and identified Mr. Vaughters as the owner of that car. And sure enough, Mr. Battle is caught on the jail recording talking to him later. And of course, we see the video which shows the shooting as described by Mr. Molina. Mr. Molina knows. Mr. Battle and identifies him as the one who fired the shots toward Tracy Avenue. So my submission here is that even if even if we're to grant that there shouldn't have been a reference to the word child or to something that suggested that it was someone of tender years, the fact that someone was injured, was an innocent bystander and was injured by a gunshot, which would have come in in any trial of this sort where the gun wasn't recovered, then there can't be an effect, a different verdict. And if I can go to just prong for which of the plain error test, right, which says it has to not granting a remedy would undermine confidence in the undermine our confidence in the judiciary. Right. The fact that Mr. Corban and Mr. Battle allowed the prospective jurors to hear that a girl walking with her father was injured by a bullet before the first juror was sworn. And the fact that he allowed the 9-1-1 tape to come into evidence with Mr. Molina saying, I didn't think it was right. That little girl got hurt. Right. Undermines any suggestion that that confidence in the judiciary would be would be undermined by not granting a remedy here. He allowed strategically the jury to hear that because he wanted to impeach Mr. Molina. So he wanted out of that tape what he wanted to get. He never asked that the tape be sanitized. And that's the key decision that we'll be able to change course and ask this court for a remedy. I mean, it's it's, you know, it. It seems that these statements were really out to appeal to the jury's sympathy and not necessarily approving any of the elements of the crime charge. I mean, isn't that objectionable as a general matter? As we said in our brief, we understand certainly the jury that the jury addresses there carried that risk and in hindsight would have been better left either unsaid or said differently, as I said, in a in a felon in possession case where we don't recover the firearm and we want to prove that the defendant beyond a reasonable doubt possessed the firearm as defined by federal law. How do we do that? Right. Well, in the case where that gun was used, the fact that it was used as part and parcel of the offense, it's direct evidence of it. Yes. Mentioning that, you know, let's not forget someone's wounded. In hindsight, we shouldn't have gone there and we won't do it again. But as I said, I don't think those things made the difference in this case. The jury didn't come back in 15 minutes and convict. They spent two hours for a case that took two days to try thinking about this case. And sometimes the speed of deliberations tells you that the jury suspended rationality. I'd also point out there was no request for a limiting instruction in this case. The defense could have said, you know, the fact that it's someone was injured is coming in only to prove the purpose the government offered it for it to prove that there was a firearm or Mr. Battle could have offered to stipulate that whoever was depicted in that video was in fact using a firearm.  He didn't do that. So we had to bear our burden of proving beyond a reasonable doubt that the person in that video who we allege was Mr. Battle, in fact, was using a pen. There are only two objections by the defense to the use of the word girl. That's my my. No, there's only no objection. There's one there's one objection when there was mention of the word stroller. Right. And that was by the by the victim's father. In response to a question, there were no objections when when four or different witnesses were being asked about children or use words in the derivations of the word children. So the only objections when I believe and I will certainly send a letter. And if I'm wrong about this, but my recollection of the record is when the father talked about pushing a stroller, that's when Mr. Corbett's got up. And then when when there was a question about was an ambulance called, then there was an objection to that as being violative of the part of the order that referenced medical records. But other than those two, I don't believe there were any other objections. And even for the summation argument that referenced L.W., the argument that was made in the post-trial rule 33 motion was not that it was an appeal to the passions of the jury, the sympathetic jury, or that it was an exacerbation of any beyond the scope of rebuttal. So the even the argument on appeal has shifted. Does the court have any other questions for me? Do you? No. Thank you, counsel. Thank you. We ask you to affirm. We'll hear rebuttal. Sanitize is a very good word, and it should be a basis of how we put this into context, because when the trial started, one of the reasons why this stipulation was entered into was because we needed and Judge Martini felt the jury should know why the police showed up. So in those instances, I didn't seek sanitation because sanitation didn't need to be sought because the purpose of it was to just establish for the jury, based on the facts, why the police came. And it came to those two witnesses. My objections came at sidebar, I think it's on page 14 of my brief, when they brought up the stroller, because now we're not getting we're getting to another context, now we're not, if we couldn't talk about the child's age, then let's put that there was a brother or sister in a stroller. So now we know there's a father holding a hand with a bunch of kids. So at that point in time, it started to have an effect. Regardless of what people may think, every trial attorney's open to their own nature of a trial as it develops. That point in time came, they were able to get through their witnesses that there was a child, that it was injured, that was their testimony. And that was a ruling. But then they went above it and they kept revisiting it, kept making references to it. And when I went to make the objection about the stroller, I said this is the fourth or fifth time they made reference to a child or things of that nature. It's in my brief, if I'm misconstruing it. But that with the cumulative effect of everything else that went on in that case, I think was strongly prejudicial. And I think in violation and it was used in summation and it left the trial attorney. Did you object to the summation? Yes, I did. I moved for a mistrial. And was denied. Because there was a reference made not only about rights, but L.W.'s right that day to walk holding her father's hand in front of the jury. Let me ask you about the transcript from the pretrial conference that's on page 11 of your brief. The part of it that's relevant where the judge said, I got my order indicating that at the trial there will be no mention of the age of the victim, the girl that was shot with the bullet. And then, you know, he says, and also you're not going to introduce any medical testimony. And then I said, that's fine. That's fine. And then the court says, OK, the relationship obviously is fine. The girl was the daughter of the father. You have no problem with that. And you said not after judge's order. Right. Wouldn't that have been the time to say, well, by age, I mean, I don't want any reference to child girl. You know, he seemed to be focused on age. What he seemed to be for this was before a trial. The jury was coming up. I was sitting. The judge was making last minute decisions. I wasn't going to go back into my order. Yeah, I had the order. I know what the order meant. Yeah, it's fine with me. Yeah, this is a trial. I mean, it's nice to write a brief to get technical, but to live and be in this situation and this situation based on the judge's ruling, quite frankly, I hope was going to get better after my objection, not get worse. So I don't know if there's anything else the court wants to ask, but I do believe it government said there were only two objections that you made. Well, I don't know, I thought that the one objection I made at sidebar covered the other cases under what I decided that point in time I had to make the objection and my objection was clearly stated that I had an objection to the stroller and the references to the child. And I did that at sidebar, not in front of the jury. So I believe they were all preserved. Anything more, Dave? Anything more, Jane? Judge Roth, anything? Okay. Thank you, counsel. Thank you very much. We thank counsel for their excellent arguments today and their excellent briefing. We'll take the case under advisement and wish counsel good health and an excellent summer. And I'll ask the question.